```
UNITED STATES DISTRICT COURT           FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
HAMMIE JOHNSON,                          :
                                         :
                 Plaintiff,              :         MEMORANDUM
                                         :         AND ORDER
        - against -                      :
                                         :         06 CV 3937 (JG)
                                         :
NATIONAL RAILROAD PASSENGER              :
CORPORATION,                             :
                                         :
                 Defendant.              :
----------------------------------------------------------------- X
```

A P P E A R A N C E S :

    HANNON & PALERMO, P.C.
        Public Ledger Building, Suite 1000
        150 S. Independence Mall West
        Philadelphia, PA 19106
    By:   Gregory J. Hannon
        Attorneys for Plaintiff

    LANDMAN CORSI BALLAINE & FORD P.C.
        One Gateway Center, 4th Floor
        Newark, NJ 07102
    By:   Andrew J. Kornblau
        Attorneys for Defendant

JOHN GLEESON, United States District Judge:

        Hammie Johnson brings this action pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.*, ("FELA") for certain injuries to his neck and back allegedly resulting from "cumulative trauma" he sustained while working for the National Railroad Passenger Corporation ("Amtrak").[1]  Compl. ¶ 9.  Amtrak moves for summary judgment in its favor.  For the reasons set forth below, the motion is granted.

---

[1] At oral argument, the parties stipulated to the dismissal of Johnson's claims for relief pursuant to the Federal Safety Appliance Acts, 45 U.S.C. § 1 *et seq.*, and the Boiler Inspection Act, 45 U.S.C. §§ 22-34.

BACKGROUND[2]

Johnson worked for Amtrak and its predecessor from 1974 to 2002, first as a coach cleaner, then as a car inspector, then for twelve years as a supervisor of equipment maintenance and an assistant wreck master. According to Johnson, the latter two jobs required much heavy work, including carrying and deploying 160-pound hydraulic jacks (so-called "ram jets"), setting wood blocks, crawling in and out from under cars, digging trenches, and moving rail and heavy equipment. *See* Johnson Dep. 36-39; 54. Johnson testified that he had to carry heavy equipment himself "[a]ll the time" because Amtrak did not supply wagon trucks, even though Johnson requested them. *Id.* at 54-55; *see also* Johnson's Rule 56.1 Response ¶ 1.

Johnson has been diagnosed with multi-level degenerative disc disease of the cervical spine, spinal stenosis of his C4 through C7-T1 vertebrae, and several instances of disc herniation, all of which resulted, Johnson claims, from the "cumulative trauma incurred through the performance of everyday job functions" at Amtrak. Pl.'s Answers to Def.'s Interrogatories ¶¶ 4, 5; *see also* Johnson's Rule 56.1 Response ¶ 2. Johnson testified that the first time he remembers experiencing pain in his neck or back was while he was working in a maintenance shop in October 2000 -- Johnson reported the pain to his supervisor and saw a doctor for it that day.[3] Dep. at 44-45; 50-52; *see also* Amtrak's Rule 56.1 Statement ¶¶ 7, 18-19; Johnson's Rule 56.1 Response ¶¶ 7, 18-19. Johnson's doctor diagnosed him with cervical radiculopathy and, after an MRI, multiple cervical disc herniations. *See* Bonventre Aff. Ex. G, H; *see also* Amtrak's Rule 56.1 Statement ¶¶ 7-9; Johnson's Rule 56.1 Response ¶¶ 7-9. In 2002, two MRIs of

---

[2] Unless otherwise noted, the facts set forth are not in dispute.

[3] Johnson saw his primary care physician in 1999 for neck pain due to muscle spasm, an unrelated malady.

Johnson's cervical spine indicated multilevel degenerative disc disease. *See* Bonventre Aff. Ex. J, L, N; *see also* Amtrak's Rule 56.1 Statement ¶¶ 10, 12, 14; Johnson's Rule 56.1 Response ¶¶ 10, 12, 14. On July 8, 2003, Johnson underwent an anterior cervical discetomy. *See* Bonventre Aff. Ex. Q; *see also* Amtrak's Rule 56.1 Statement ¶ 17; Johnson's Rule 56.1 Response ¶ 17.

As the foregoing citations to the record illustrate, the parties are in agreement that Johnson's cervical herniations and multilevel degenerative disc disease were diagnosed in 2000 and 2002, respectively, and that he underwent surgery for his conditions in July 2003. Nevertheless, as evidence for the proposition that his neck pain did not begin until late 2003, Johnson points to a report by Dr. Bradley J. Cohen, which states that Johnson's "symptoms began shortly before 2004." Hannon Aff. Ex. B.

The parties dispute when Johnson discovered that his pain was caused by his job at Amtrak. Johnson repeatedly testified that he did not know while he was working that the heavy work was causing his pain. *See* Johnson Dep. 55-56. According to Johnson, he reported to his supervisor that he felt pain while walking on the railroad track, but he also "shook it off because [he] thought it was just age." *Id.* at 52. Johnson conceded, however, that "as of now, I think, yes, lifting those heavy rams and those big bars that we had to carry over the rails and dragging them underneath the equipment, setting them up by yourself" might have stressed his neck, in addition to "[c]hanging the wheels out," and lifting "heavy 75-pound boxes." *Id.* at 56. Nevertheless, Johnson maintains that he did not learn the injuries were work-related until he was told so by Cohen in January 2004. *Id.* at 83; Johnson's Rule 56.1 Response ¶ 13.

For its part, Amtrak argues Johnson believed his injuries were work-related as early as 2002. It points to a medical questionnaire dated October 7, 2002, in which Johnson

3

answered in the affirmative to the question, "Is your condition due to auto accident or job related injury?" Bonventre Aff. Ex. M.

Johnson filed his complaint in this action on August 14, 2006.

DISCUSSION

Amtrak argues that Johnson's FELA claim is time-barred as a matter of law. Johnson argues that a genuine dispute exists as to whether he knew or should have known that he sustained a "cumulative trauma injury" caused by his work at Amtrak. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. Br.") 4. Because I conclude as a matter of law that Johnson knew of his injuries and should have known of their cause more than three years before he commenced this action, I agree that his claim is time-barred.

A.   *Standard of Review*

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must demonstrate that no genuine issue exists as to any material fact. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). For summary judgment purposes, a fact is "material" when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Accordingly, the test for whether an issue is genuine requires "the inferences to be drawn from the underlying facts

4

[to] be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and citation omitted). This standard applies "whether summary judgment is granted on the merits of the claim, or on an affirmative defense such as the statute of limitations." *BellSouth Telecommunications, Inc. v. W.R. Grace & Co. - Conn.*, 77 F.3d 603, 609 (2d Cir. 1996).

B.      *The Timeliness of the FELA Claim*

Amtrak moves for summary judgment on the ground that Johnson's FELA claim accrued outside the limitations period. FELA provides that "[n]o action shall be maintained . . . unless commenced within three years from the day the cause of action accrued." 15 U.S.C. § 56. Johnson commenced this action by filing it on August 14, 2006, so if Johnson's cause of action accrued prior to August 14, 2003, it is time-barred.

The parties agree that because Johnson alleges a "gradual injury" from "ongoing exposure to harmful working conditions," his FELA cause of action "accrues when the plaintiff in the exercise of reasonable diligence knows both the existence and the cause of his injuries." *Mix v. Delaware & Hudson Railway Co.*, 345 F.3d 82 (2d Cir. 2003) (applying discovery rule to FELA claim); *Anthony v. Consol. Rail Corp.*, 1998 WL 696288, at *3 (N.D.N.Y. Sept. 30, 1998) (same); *see* Pl. Br. 4 ("The statute of limitations for a Plaintiff such as Hammie Johnson with a cumulative trauma injury begins to run when he becomes aware of his injury and its cause."); Def. Br. 4 ("In cases alleging occupational exposure, courts define the term 'accrual' in two parts: [1] when a reasonable person knows of the existence of an injury; and [2] when he knows or should know through the exercise of reasonable diligence of its possible cause.").

Amtrak argues that there is no genuine issue of fact regarding Johnson's actual

5

knowledge of his injury before August 14, 2003. I agree. Johnson admits that he was diagnosed in 2000 with cervical radiculopathy and multiple disc herniations and in 2002 with degenerative disc disease.[4] But he seeks relief for precisely these injuries. Objecting to Amtrak's characterization of his injury, Johnson refers me to his submitted answers to Amtrak's interrogatories "[f]or a more complete description of Plaintiff's cervical injury." Johnson's Rule 56.1 Response ¶ 2. In those answers, Johnson claims to suffer from Multi-Level Degenerative Disc Disease of the Cervical Spine, Spinal Stenosis of the C-4 th[rough] C7-T1 vertebrae, and Dis[c] Herniation of the C4-5, C5-6, and C6-7 vertebrae." Pl.'s Answers to Def.'s Interrogatories ¶ 4.[5] Because Johnson admits being diagnosed prior to August 14, 2003 with the same maladies that he complains of in this action, I conclude as a matter of law that he knew of the existence of his injuries outside the limitations period.

Johnson attempts to escape this result by referring, in his affidavit opposing summary judgment, to Dr. Cohen's May 9, 2007 statement that Johnson's "symptoms began short[l]y before 2004." Hannon Aff. Ex. B. Johnson argues that the Cohen statement "negat[es] Defendant's statute of limitations argument." Hannon Aff. ¶ 4. It does not. Cohen's statement is flatly contradicted by Johnson's own repeated admissions that he was diagnosed for the conditions he complains of well before August 14, 2003. Viewing "the record taken as a whole,"

---

[4] He also admits that he underwent an anterior cervical discetomy for these problems on July 8, 2003.

[5] The parties' moving papers did not address the question whether Johnson had actual knowledge of his spinal stenosis prior to August 14, 2003. There is support for this injury in the record: a November 24, 2003 report by Dr. Cohen, which was submitted by Johnson at oral argument, remarks upon symptoms consistent with spinal stenosis. *See* Letter of Andrew J. Kornblau, Aug. 31, 2007, Ex. B. Supplementary filings by Amtrak, however, indicate that an October 30, 2000 MRI revealed "mild foraminal narrowing at several levels" of the spine, *see id.* Ex. C, and an April 22, 2002 report by Dr. Paul Enker diagnosed Johnson with "foraminal stenosis." *See id.* Ex. D. Johnson did not controvert these filings. I conclude they demonstrate Johnson's actual knowledge of his spinal stenosis prior to August 14, 2003.

6

*Matsushita*, 475 U.S. at 587, this stray statement does not create a genuine dispute about multiple facts that Johnson himself admits. *Cf. Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572 (2d Cir. 1969) (later submission contradicting prior testimony insufficient to create genuine issue of fact).

Amtrak argues that Johnson should have known, in the exercise of reasonable diligence, that his job was the cause of his injuries before August 14, 2003. "The discovery rule requires plaintiffs to exercise reasonable diligence in discerning both the fact and cause of their injuries. Both components require an objective inquiry into when the plaintiff knew or should have known, in the exercise of reasonable diligence, the essential facts of injury and cause." *Anthony*, 1998 WL 696288, at *3. Johnson thus had "an affirmative duty to investigate the facts of his injury and its cause once alerted by symptoms." *Id.* at *6; *see also Wagner v. Consol. Rail Corp.*, 206 F. Supp. 2d 339, 342-43 (N.D.N.Y. 2002) (same).

I agree with Johnson that, viewing the facts in his favor, there is a genuine dispute about whether he *actually* knew prior to August 14, 2003 that his job at Amtrak had caused his injuries. There is no direct evidence of actual knowledge until Cohen suggested his injury was work-related in 2004, *see* Johnson Dep. 83, and Johnson testified that he thought the pain was due to his age. *Id.* at 52. Nevertheless, I conclude as a matter of law that Johnson "possessed sufficient critical facts" before August 14, 2003, *Anthony*, 1998 WL 696288, at *5, to trigger a reasonable person to investigate whether his heavy work at Amtrak caused his neck and back pain. Johnson first experienced his pain while he was working in 2001, and then experienced his second onset of pain while he was working in 2002 -- those facts alone should have led him to investigate whether his job activities might be the source of his symptoms. Moreover, Johnson

7

himself pointed out in his deposition particularly heavy jobs that, he conceded, might have been responsible for causing his injuries. Johnson cannot reasonably argue, in light of his own testimony, that a connection between his work and his symptoms was unreasonable from his perspective. *See id.* at *5 (finding plaintiff had reason to connect hearing loss with his exposure to loud noises when plaintiff "acknowledged that he was aware that exposure to loud noises could lead to hearing loss").

That Johnson concluded instead that his age was a cause of his pain does not excuse his failure to exercise due diligence. The inquiry is an objective one. (Moreover, even if Johnson's age was a cause of his pain, that does not preclude his job from being a likely cause too.) Johnson also argues "he was less likely to make a connection between the cumulative trauma injury to his neck and his activities at work than someone who had litigated claims and/or lawsuits in the past for personal injuries." Pl. Br. 8. But this argument, too, wrongly assumes a subjective standard. The duty to investigate applies to experienced and inexperienced claimants alike.

In sum, viewing the facts in the light most favorable to Johnson, I conclude as a matter of law that Johnson knew of his injuries and should have known of their cause more than three years before he commenced this action. Since Johnson's FELA claim therefore accrued outside the limitations period, the motion for summary judgment is granted.

CONCLUSION

Amtrak's motion for summary judgment is granted. The Clerk is respectfully directed to enter judgment accordingly, and to close the case.

So ordered.

John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
September 25, 2007